**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| NU IMAGE, INC. | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )  **CA. 1:11-cv-00301-RLW** |
| | ) |
| DOES 1 – 23,322 | ) |
| | ) |
|     **Defendants.** | ) |
| _____ | ) |

**PLAINTIFF'S STATEMENT OF GOOD CAUSE**
**IN RESPONSE TO THE COURT'S JUNE 7, 2011 ORDER TO SHOW CAUSE**
**[DOC. NO. 9]**

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. BRIEF PROCEDURAL OVERVIEW.....................................................................4

III. ARGUMENT ........................................................................................................5

A. The nature of the torrent activity alleged .......................................................5

B. Plaintiff has appropriately joined the Doe Defendants at this stage of the case .............9

1. General standards regarding joinder .......................................................9

2. Plaintiff's right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences .......................................................................10

3. A question of law or fact common to all Doe Defendants will arise in the action ..14

4. Similar cases have found that allegations similar to Plaintiff's do not violate Rule 20 ...................................................................................................14

5. Similar cases that have found misjoinder are significantly distinguishable and flawed.....................................................................................................19

6. Joinder will not prejudice the Doe Defendants or result in needless delay .............21

C. The Court should permit Plaintiff to conduct discovery to ascertain personal jurisdiction of the various Doe Defendants .......................................................23

1. General standards regarding personal jurisdiction..................................................23

2. Plaintiff, and the Court, can only analyze personal jurisdiction after discovery .....24

D. Any action taken pursuant to Rules 20 or 21 or to dismiss any Doe Defendant on venue or personal jurisdiction grounds would be premature ............................................28

V. CONCLUSION ....................................................................................................33

## TABLE OF AUTHORITIES

**Cases**

A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) ..........................................29

Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577,

    Case No. 10-453 (D.D.C.) ............................................................. 15-16, 31, 34

Adams v. Quattlebaum, 219 F.R.D. 195 (D.D.C. 2004)........................................................4

Anger v. Revco, 791 F.2d 956 (D.C. Cir. 1986)....................................................32, 33

Arista Records, LLC v. Does 1-11, No. 1:07-CV-2828, 2008 WL 4823160

    (N.D. Ohio Nov. 3, 2008) ............................................................18, 21

Arista Records LLC v. Does 1-16, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060

    (N.D.N.Y. Feb. 18, 2009) ............................................................17, 18

Arista Records LLC v. Does 1–19, 551 F.Supp.2d 1 (D.D.C. 2008) ................................13, 29, 34

Arista Records, LLC v. Does 1-27, 584 F. Supp. 2d 240 (D. Me. 2008) .................... 16-18, 21, 23

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004)..19, 20

Call of the Wild Movie, LLC v. Does 1-1,062, Case No. 10-455 (D.D.C.) ..........15, 26, 31, 34, 35

Brereton v. Commc'ns Satellite Corp., 116 F.R.D. 162 (D.D.C. 1987) .................................... 9-10

Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080 (D.C. Cir. 1998).............24

Carmona v. Ross, 376 F.3d 829 (8th Cir. 2004) ...........................................................4

Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 579 (N.D. Cal. 1999) ................................ 28-29

Cornered, Inc. v. Does 1-2,177, Case No. 10-1476 (D.D.C.)........................................................34

Davidson v. District of Columbia, 736 F. Supp. 2d 115 (D.D.C. 2010)........................................10

Diamond Chem. Co. v. Atofina Chems., Inc., 268 F.Supp.2d 1 (D.D.C. 2003) .................... 23-24

DIRECTV, Inc. v. Barrett, 220 F.R.D. 630 (D. Kan. 2004)...............................................12, 14, 22

DIRECTV. Inc. v. Essex, No. C02-5503RJB, 2002 U.S. Dist. LEXIS 26923

    (W.D. Wash. Nov. 13, 2002) .......................................................................13

DIRECTV, Inc. v. Hosey, 289 F. Supp. 2d 1259 (D. Kan. 2003) ..................................12

DIRECTV, Inc. v. Russomanno, No. 03-2475, 2003 U.S. Dist. LEXIS 23403

    (D.N.J. Nov. 12, 2003)................................................................................12

Disparte v. Corporate Executive Bd., 223 F.R.D. 7 (D.D.C. 2004) .........................................9, 13

Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520 (D.D.C.) .................15, 26, 31, 34, 35

Dorchy v. WMATA, 45 F.Supp.2d 5 (D.D.C. 1999) ......................................................................4

Feist Publ'ns, Inc. v. Rural Tel. Service Co., Inc., 499 U.S. 340, 111 S. Ct. 1282,

    113 L.Ed.2d 358 (1991) ..............................................................................29

First Chicago Int'l v. United Exch. Co., 836 F.2d 1375 (D.C. Cir. 1988)....................................33

Fonovisa, Inc. v. Does 1-9, Civil Action No. 07-1515, 2008 WL 919701

    (W.D. Pa. Apr. 3, 2008) .............................................................................18

G2 Productions LLC v. Does 1-83, Case No. 10-41 (D.D.C.) ......................................................34

GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000).......23, 24, 33

Hansen v. Neumueller GmbH, 163 F.R.D. 471 (D. Del. 1995)....................................................33

Humane Soc'y of the United States v. Amazon.com, Inc., No. 07–623, 2007 WL 1297170,

    2007 U.S. Dist. LEXIS 31810 (D.D.C. May 1, 2007)..................................27

In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003) ......................................................29

In re Vitamins Antitrust Litigation, 94 F.Supp.2d 26 (D.D.C. 2000)...........................................24

Lane v. Tschetter, No. 05–1414, 2007 WL 2007493 (D.D.C. July 10, 2007).....................9, 22-23

Lions Gate Films, Inc., et al. v. Does 1-5, Case No. 05-386 (D.D.C.) ..........................................34

London–Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153 (D. Mass. 2008) ......................22, 24, 27

M.K. v. Tenet, 216 F.R.D. 133 (D.D.C. 2002) ...........................................................................10

Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569 (D.D.C.)15, 26, 31, 34, 35

Metro-Goldwyn-Mayer Pictures Inc., et al. v. Does 1-10, Case No. 04-2005 (D.D.C.) ...............34

MyMail, Ltd. v. America Online, Inc., 223 F.R.D. 455 (D.C. Tex. 2004)............................. 11-12

Mosley v. General Motors Corporation, 497 F.2d 1330 (8th Cir. 1974).........................................9

Ott v. Does, Case No. 11-553 (D.D.C.) .........................................................................................5

Sinwell v. Shapp, 536 F.2d 15 (3rd Cir. 1976).............................................................................32

Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)............18, 25, 26, 29

Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc., 233 F.R.D. 615 (D. Kan. 2006)...................12

Stark Carpet Corp. v. M-Geough Robinson, Inc., 481 F.Supp. 499 (S.D.N.Y. 1980) .................32

Twentieth Century Fox Film Corporation, et al. v. Does 1-9, Case No. 04-2006 (D.D.C.)..........34

UMG Recordings, et al. v. Does 1-199, Case No. 04-093 (D.D.C.)..............................................34

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966)...10

Voltage Pictures, LLC v. Does 1-5,000, Case No. 10-873 (D.D.C.)................................15, 34, 35

West Bay One, Inc. v. Does 1-2,000, Case No. 10-481 (D.D.C.) .....................................15, 31, 34

West Coast Productions, Inc. v. John Does 1-5829, Case No. 11-57 (D.D.C.)...........15, 31, 33, 35

World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559,

     62 L.Ed.2d 490 (1980) ..................................................................................23

Worldwide Film Entertainment LLC v. Does 1-749, Case No. 10-38 (D.D.C.) ..........................34

**Statutes**

17 U.S.C. §106.................................................................................................................29

28 U.S.C. § 1391 ....................................................................................................... passim

28 U.S.C. §1400 ......................................................................................................... passim

28 U.S.C. § 1406 ...............................................................................................................32

Fed. R. Civ. P. Rule 12 ...............................................................................................32, 33

Fed. R. Civ. P. Rule 20 ...................................................................................................9, 19

Fed. R. Civ. P. Rule 21 ........................................................................................................9

**Miscellaneous**

*Administration's White Paper On Intellectual Property Enforcement Legislative*

    *Recommendations* (March 2011) ............................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

Plaintiff has identified certain Defendants who have unlawfully copied and distributed Plaintiff's motion picture, *"The Expendables"* (the "Movie"), over the Internet.  To date, Plaintiff has only been able to identify the Doe Defendants by their Internet Protocol ("IP") address and the date and time of alleged infringement.  The only way that Plaintiff can determine Defendants' actual identities is from the various non-party Internet Service Providers ("ISPs") to which Defendants subscribe and from which Defendants obtain Internet access.  However, Plaintiff cannot obtain this discovery without first filing a lawsuit against the anonymous Doe Defendants.

As Plaintiff will demonstrate herein, because of the unique and true peer-to-peer nature of the "torrent" file sharing protocol alleged by Plaintiff in this case, all the Doe Defendants have engaged in the same series of transactions to infringe on Plaintiff's copyright.  Further, because Plaintiff has not yet learned the identities of all Doe Defendants in this case, any severance under Rule 20 or any determination of venue or personal jurisdiction is premature at this time.  Overall, justice requires that Plaintiff be permitted to proceed with its case as pled.  Therefore, Plaintiff respectfully requests that the Court reinstate its order granting Plaintiff leave to conduct expedited discovery on the IP addresses listed in its First Amended Complaint.

As a practical matter, the enforcement of copyright law and the proliferation of online copyright infringement is a public policy priority of both Congress and the Executive.  In the *Administration's White Paper On Intellectual Property Enforcement Legislative Recommendations* (March 2011) the Obama administration notes that "[p]iracy and counterfeiting in the online environment are significant concerns for the Administration.  They cause economic harm and threaten the health and safety of American consumers. . . .  We are

6

aware that members of Congress share our goal of reducing online infringement and are considering measures to increase law enforcement authority to combat websites that are used to distribute or provide access to infringing products."  See http://www.whitehouse.gov/sites/default/files/ip_white_paper.pdf.  The report goes on to propose a host of stricter legal protections for rights holders and stiffer penalties.  As a practical matter, as outlined herein, except for Federal Court copyright infringement litigation, little or no alternative means of copyright enforcement against torrent based theft of copyright protected material currently exists.

## II. BRIEF PROCEDURAL OVERVIEW

Plaintiff filed its Complaint against 6,500 Doe Defendants on February 4, 2011.  [Doc. No. 1]  Plaintiff then filed a Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference, which was granted by this Court on March 17, 2011.  [See Doc. Nos. 5, 6]

Because the monitoring of online infringement of Plaintiff's Movie is ongoing (see Doc. No. 1 (Complaint) at ¶ 8), Plaintiff filed a First Amended Complaint on May 4, 2011 pursuant to Fed. R. Civ. P. Rule 15(a)(1).  [See Doc. Nos. 7, 8]  The Doe Defendants identified by IP address in the First Amended Complaint are associated with alleged infringing activity occurring after the filing of the Complaint and are thus newly added Defendants.[1]

---

[1]  The period for service of process stated in Fed. R. Civ. P. Rule 4(m) is restarted on filing of an amended complaint as to those defendants newly added in the amended complaint.  Carmona v. Ross, 376 F.3d 829, 830 (8th Cir. 2004).  Further, an amended complaint supersedes the original complaint, and the amended complaint becomes the operative complaint and renders the prior complaint of no legal effect.  Adams v. Quattlebaum, 219 F.R.D. 195, 197 (D.D.C. 2004) (citing Washer v. Bullitt County, 110 U.S. 558, 562, 4 S.Ct. 249, 28 L.Ed. 249 (1884); Bancoult v. McNamara, 214 F.R.D. 5, 13 (D.D.C.2003)); Dorchy v. WMATA, 45 F.Supp.2d 5, 7 fn. 1 (D.D.C. 1999).

On May 25, 2011, the Court issued a Minute Order setting a status conference and stating, *inter alia*, that Plaintiff's counsel should be prepared to discuss "the basis for venue, joinder, and personal jurisdiction with respect to all putative defendants."[2]  On June 2, 2011, the Court issued a Minute Order vacating its prior order granting Plaintiff's motion for leave to take expedited discovery.  On June 7, 2011, the Court issued the Order to Show Cause (Doc. No. 9) to which Plaintiff now responds.

## III. ARGUMENT

A.    The nature of the torrent activity alleged

Plaintiff has alleged and shown in its motion for expedited discovery that each and every Doe Defendant, without the permission or consent of the Plaintiff, has used an online media distribution system to copy and distribute to the public Plaintiff's copyrighted Movie.  [Doc. No. 8 (First Amended Complaint) at ¶ 12]  In doing so, each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution, constituting infringement of Plaintiff's exclusive rights protected under the Copyright Act of 1976 (17 US.C. § 101 *et seq.*).  Id.

As alleged, the manner of the illegal transfer of Plaintiff's Movie by Doe Defendants has been through a "BitTorrent protocol" (or "torrent") peer-to-peer (P2P) network, which is significantly different in its architecture than the older P2P protocols used by such networks as Napster, Grokster, Kazaa, Limewire, and Gnutella.  [Doc. No. 8 (First Amended Complaint) at ¶ 3; see also Declaration of Daniel Arheidt filed concurrently herewith ("Arheidt Decl. 06/21/11"), ¶ 2]  The BitTorrent protocol used by the Doe Defendants to copy and distribute Plaintiff's

---

[2]  Plaintiff's counsel notes that it was put on notice that the Court had concerns with the styling of Plaintiff's case when the Court issued a notice of hearing on May 20, 2011 in a similar case. See Ott v. Does, Case No. 11-553 (Wilkins, J.) (D.D.C.).

Movie allow computers with low bandwidth capabilities to participate in large data transfers across a network, which was more problematic with the older P2P protocols.  [Doc. No. 8 (First Amended Complaint) at ¶ 3]  Using the BitTorrent protocol, the initial file-provider intentionally elects to share or upload a file via a BitTorrent network.  Id.  This is called "seeding."  Id.  Other users ("peers") on the network connect to the seeder to download.  Id.  As additional peers request the same file, each additional user becomes a part of the network (or "swarm") from where the file can be downloaded, which means that such additional user's computer is connected not only to the seeder/uploader but also to other peer/downloaders.  Id.  Unlike the older P2P protocols, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together comprise the whole.  Id.  This means that every "node" or peer user who has a copy of the infringing copyrighted material on such a network—or even a portion of a copy—can also be a source of download for that infringing file, potentially both copying and distributing the infringing work simultaneously.  Id.

This distributed nature leads to a rapid viral spreading of a file through peer users, all of whom are both uploading and downloading portions of the file simultaneously.  [Doc. No. 8 (First Amended Complaint) at ¶ 4]  As more peers join the swarm, the likelihood of a successful download increases.  Id.  Because of the nature of the BitTorrent protocols, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even likely, source of the file for the subsequent peer.  Id.  Essentially, because of the nature of the swarm downloads as described above, every infringer is simultaneously stealing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country.  See id.

One difference between this BitTorrent protocol and the older P2P network protocols used by such networks as Napster, Grokster, Kazaa, Limewire, and Gnutella is how they locate and trade bits of the files.  Arheidt Decl. 06/21/11, ¶ 3.  Napster, Grokster, Kazaa, Limewire, Gnutella, etc. are file sharing networks.  Id.  Through a series of nodes, infringers are interconnected to a variety of people sharing a variety of files.  Id.  Most of the time they send out a search request along the network and people who have files that meet the search criteria answer back that they have it.  Id.  Then an individual will pick one of the search results and start getting bits of the file from that particular person who has some available bandwidth for transferring of the file.  Id.

BitTorrent, on the other hand is file-focused.  Arheidt Decl. 06/21/11, ¶ 4.  Someone who has a copy of the file creates a tracker and makes it available.  Id.  Rather than finding that tracker by sending out search requests along a file sharing network, infringers find it on web sites, via recommendations in chat rooms, in links posted to mailing lists, etc.  Id.  Then everyone interested in sharing that specific file (either providing a copy they already downloaded or getting a copy) can use the tracker to essentially create a network dedicated to sharing just that specific file.  Id.

The primary characteristic of BitTorrent is the notion of torrent, which defines a session of transferring a single file to a set of peers.  Arheidt Decl. 06/21/11, ¶ 5.  Peers involved in a torrent cooperate to replicate the file among each other using swarming techniques.  Id.  A user joins an existing torrent by downloading a ".torrent" file and adding it to its client.  Id.  This file contains meta-information on the file to be downloaded, e.g., the number of pieces, the SHA-1 hash values of each piece, and the IP address of the so-called tracker of the torrent.  Id.  The tracker is the only centralized component of BitTorrent, but it is not involved in the actual distribution of the file.  Id.  It only keeps track of the peers currently involved in the torrent and

collects statistics on the torrent.  Id.  When joining a torrent, a new peer asks the tracker for a list of IP addresses of peers to connect to and cooperate with, typically 50 peers chosen at random in the list of peers currently involved in the torrent.  Id.  This set of peers forms the peer set of the new peer.  Id.  The group of peers will share the file among each other.  Id.  Each peer knows what pieces each other peer in its peer set has, and each peer helps the other to fulfill the completion of the file.  Id.

If a file is observed directly after its release, the network size increases from a few users to the maximum amount in which all users are potential uploaders for the respective file. Arheidt Decl. 06/21/11, ¶ 6.  Within a small network, and depending on the upload bandwidth of each user and the size of the file shared, the plausibility that each user downloaded a part from each other is very high.  Id.  Within Mr. Achache's declaration, he illustrates an example where Guardaley found several IP addresses sharing the same file with the same hash, same name, same file size, and operating over the same ISP with not more than one hour between them on multiple consecutive days.  Id.  All those infringers only had one specific file in connection, a file of Plaintiff's Movie.  Id.  Seeing the whole structure of the infringers from other ISPs sharing the same file with the same hash value, it indicates that all of those individuals must have searched for this file on a website like Isohunt, Mininova, the Pirate Bay, etc., and they all chose the same file.  Id.

Overall, there are a limited number of files of Plaintiff's movie available on BitTorrent protocols.  Arheidt Decl. 06/21/11, ¶ 7.  Accordingly, because of the nature of these protocols, it is highly likely that all of the infringers of Plaintiff's movie have been involved with the same infringing file from the time of its initial seeding up to and including the present day.  Id.

B.       Plaintiff has appropriately joined the Doe Defendants at this stage of the case.

### 1.   General standards regarding joinder

The Federal Rules of Civil Procedure, specifically Rule 20, provide for the permissive

joinder of parties.  As relevant to this case, Rule 20 states that "[p]ersons…may be joined in one

action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action."  Fed. R. Civ. P. Rule 20(a)(2).

Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action.  On

motion or on its own, the court may at any time, on just terms, add or drop a party.  The court

may also sever any claim against a party."  Fed. R. Civ. P. Rule 21.

In considering the first prong of Rule 20(a), determining whether claims are part of the

same transaction, occurrence, or series of transactions and occurrences, the Court asks whether

the claims are "logically related."  Disparte v. Corporate Executive Bd., 223 F.R.D. 7, 10, fn. 6

(D.D.C. 2004) (Walton, J.) (stating that the "logical relationship test is flexible").  This is a

flexible test and courts seek the "broadest possible scope of action."  Lane v. Tschetter, No. 05–

1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) (Sullivan, J.) (quoting United Mine

Workers of Am. v. Gibbs, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966)).

As to the second prong of Rules 20(a), "[t]he rule does not require that all questions of

law and fact raised by the dispute be common….common questions have been found to exist in a

wide range of context."  Mosley v. General Motors Corporation, 497 F.2d 1330, 1334 (8th Cir.

1974).

Lastly, the Court should consider whether an order under Rule 21 would prejudice any

party or would result in undue delay.  See Brereton v. Commc'ns Satellite Corp., 116 F.R.D.

12

162, 163 (D.D.C. 1987) (Richey, J.) (stating that Rule 21 must be read in conjunction with Rule

42(b), which allows the court to sever claims in order to avoid prejudice to any party).

Overall, the purpose of Rule 20 is "to promote trial convenience and expedite the final

resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss

of time to the court as well as the litigants appearing before it." M.K. v. Tenet, 216 F.R.D. 133,

137 (D.D.C. 2002) (Urbina, J.). "[T]he two prongs of Rule 20(a) are to be liberally construed in

the interest of convenience and judicial economy . . . in a manner that will secure the just,

speedy, and inexpensive determination of the action." Davidson v. District of Columbia, 736 F.

Supp. 2d 115, 119 (D.D.C. 2010) (Urbina, J.) (citations and alterations omitted). "[T]he impulse

is toward entertaining the broadest possible scope of action consistent with fairness to the parties;

[and] joinder of claims, parties, and remedies is strongly encouraged." United Mine Workers of

Am. v. Gibbs, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966).


**2. Plaintiff's right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences.**

As shown above, the nature of the infringement alleged in this case tends to show that all

Doe Defendants engaged in the same series of transactions and occurrences.  Each Doe

Defendant is alleged to have participated in a swarm with other Doe Defendants, all of which

was targeted at one thing – illegally downloading/uploading Plaintiff's copyrighted Movie.  [See

Doc. No. 8 (First Amended Complaint) ¶ 3]  Even though all of the Doe Defendants may not

have participated on the very same day and time, all of the events involving all of the Doe

Defendants are logically related to the sharing of the seed file (Plaintiff's copyrighted Movie in

digital form).

Specifically, Plaintiff alleges that the BitTorrent file-sharing protocol "makes every downloader also an uploader of the illegally transferred file(s).  This means that every 'node' or peer user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file."  [Doc. No. 8 (First Amended Complaint) ¶ 3]  Additionally, the "nature of a BitTorrent protocol [is that] any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file."  Id. at ¶ 4.

Again, this BitTorrent file-sharing protocol is significantly different from the prior cases involving copyright infringement via P2P systems.  In those earlier cases, the doe defendants utilized platforms such as Napster, Grokster, Kazaa, and Limewire.  Using those platforms, the infringer basically copied a work from one other user.  Each particular act of infringement involved a specific one-on-one connection between two users for that specific file.  Once the sharing of that file was over, so presumably was the relationship between the infringers.

Further, because those cases dealt with multiple rights holders asserting claims for multiple copyrighted works, the infringements tended to be more independent and unrelated acts amongst the various doe defendants.  For example, in the prior cases each doe defendant was typically alleged to have downloaded a number of different songs—protected by a number of different copyrights and owned by a number of different plaintiff copyright holders—from various third-party infringers.

Here, the fact that Plaintiff is alleging infringement of only one work tends to show a relationship among all Doe Defendants.  In MyMail, Ltd. v. America Online, Inc., 223 F.R.D. 455 (D.C. Tex. 2004), the court specifically held that joinder of unrelated defendants who allegedly infringed the same patent was proper.  The court stated:

> A logical relationship exists if there is some nucleus of operative facts or law….MyMail alleges that all defendants have infringed the '290 patent….The UOL Defendants urge the Court to adopt the rule that infringement by different defendants does not satisfy Rule 20's same transaction requirement, but the Court finds that this interpretation of Rule 20 is a hypertechnical one that perhaps fails to recognize the realities of complex, and particularly patent, litigation. In essence, the UOL Defendants advocate a rule that requires separate proceedings simply because unrelated defendants are alleged to have infringed the same patent. The Court disagrees with such a per se rule that elevates form over substance. Such an interpretation does not further the goals of Rule 20, especially for discovery and motion purposes.

Id. at 456-457 (internal citations omitted); see Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc., 233 F.R.D. 615 (D. Kan. 2006) ("The first requirement is met because Sprint's claims against all the defendants arise out of the same transaction or occurrence. Most notably, Sprint alleges that each of the defendants has infringed the same seven patents.").

Also, in DIRECTV, Inc. v. Barrett, 220 F.R.D. 630 (D. Kan. 2004), the court held that the satellite broadcaster's action against alleged owners of pirate access devices arose out of same "transaction" for purposes of the joinder rule.  There, the broadcaster alleged that each defendant purchased one or more devices, identical or nearly identical, designed to illegally intercept satellite signals or facilitate illegal interception, and records and other information that served as the basis of broadcaster's claims arose from the same investigations and raids.  Id. at 632; see also DIRECTV, Inc. v. Russomanno, No. 03-2475, 2003 U.S. Dist. LEXIS 23403, at *14 (D.N.J. Nov. 12, 2003) (finding it difficult at an early stage in the litigation to conduct an analysis to determine whether the claims against defendants involve the same factual issues or arise out of the same transactions or series of transactions:  "without some discovery and the development of a substantive factual record, defendants cannot yet demonstrate the propriety of severing the claims and instituting separate actions against each of them."); DIRECTV, Inc. v. Hosey, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003) (declining to sever the claims because it was "not prepared to hold that the claims in this case did not arise out of the same transaction,

occurrence, or series of transactions or occurrences."); <u>DIRECTV. Inc. v. Essex</u>, No. C02-5503RJB, 2002 U.S. Dist. LEXIS 26923, at *4 (W.D. Wash. Nov. 13, 2002) (declining to sever claims because defendants "purchased and used Pirate Access Devices ... from the same distribution center in Santa Ana, California" and the alleged purchases fell "within a twelve-month time frame, from June 2000 through May 2001.").

Similarly, in this case, Plaintiff alleges that all Doe Defendants utilized an identical or nearly identical torrent P2P protocol to illegally infringe Plaintiff's one copyrighted work. Additionally, the evidence that will serve as the basis of Plaintiff's claims against all Doe Defendants arose from the same investigation by the third-party technology company utilized by Plaintiff.  Based on these allegations, Plaintiff's claims against all of the Doe Defendants are logically related.

Each Doe Defendant is a possible source for Plaintiff's Movie and may be responsible for distributing the Movie to the other Doe Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.  <u>See</u> <u>Disparte</u>, 223 F.R.D. at 10 (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is "flexible.").  While the Doe Defendants may be able to rebut these allegations later, Plaintiff has sufficiently alleged that its claims against the Doe Defendants potentially stem from the same transaction or occurrence and are logically related.  <u>See</u> <u>Arista Records LLC v. Does 1–19</u>, 551 F.Supp.2d 1, 11 (D.D.C.) (2008) (Kollar-Kotelly, J.). ("While the Courts notes that the remedy for improper joinder is severance and not dismissal, ... the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct.").

### 3. A question of law or fact common to all Doe Defendants will arise in the action.

Plaintiff has alleged identical claims against all Doe Defendants for each and every Doe Defendant's alleged use of an online media distribution system to distribute Plaintiff's Movie. [See Doc. No. 8 (First Amended Complaint) at ¶ 12]  Therein, Plaintiff has alleged similar questions of fact, including without limitation how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect evidence about the infringing activity.  Further, Plaintiff has alleged the exact same legal claim against each and every Doe Defendant – "Infringement of Registered Copyright."  [See Doc. No. 8 (First Amended Complaint) at p. 4] Therein, Plaintiff has alleged similar questions of law and fact against all Doe Defendants concerning the validity of the copyrights in the Movie and the infringement of the exclusive rights reserved to Plaintiffs as the copyright holder.

Therefore, Plaintiff has satisfied the second prong of Rule 20(a)(2).  See DIRECTV, Inc. v. Barrett, 220 F.R.D. at 632 ("The court also concludes that the claims against the defendants involve at least one common question of law or fact. DIRECTV seeks redress under identical legal theories against each of the defendants in each case. The claims in each complaint and the law under which they are brought are the same. Based on DIRECTV's allegations, the claims in each case involve at least one common question of law.").

### 4. Similar cases have found that allegations similar to Plaintiff's do not violate Rule 20.

Other courts dealing with cases for copyright infringement against unknown doe defendants have specifically found that joinder of the defendants was proper under Rule 20, especially at the early outset of these types of cases.

Recently, this Court issued a detailed analysis of the joinder issue in nearly identical cases. Judge Howell concluded that "the plaintiffs' allegations against the putative defendants in each case meet the requirements for permissive joinder." Call of the Wild Movie, LLC v. Does 1-1,062, Case No. 10-455, Doc. No. 40 at p. 6 (D.D.C. March 22, 2011); Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569, Doc. No. 48 at p. 6 (D.D.C. March 22, 2011); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 26 (D.D.C. March 22, 2011).[3] Judge Kollar-Kotelly recently came to the same conclusion in denying multiple Doe Defendants' motions to quash subpoenas or dismiss them from a similar case. West Coast Productions, Inc. v. John Does 1-5829, Case No. 11-57, Doc. No. 125 at pp. 9-11 (D.D.C. June 10, 2011).[4]

Previously, in two similar pending cases in front of Judge Collyer, an order to show cause hearing was conducted wherein Judge Collyer ruled that joinder was proper at this stage of the proceedings and "that, at this juncture, the numerous Doe Defendants are not severed due to misjoinder…." West Bay One, Inc. v. Does 1-2,000, Case No. 10-481, Doc. No. 25 at p. 1 (D.D.C. July 2, 2010); Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577,

---

[3] Judge Howell issued one Memorandum Opinion for the three separate cases, which can also be found at Call of the Wild Movie, LLC v. Does 1-1,062, --- F.Supp.2d ----, 2011 WL 996786 (D.D.C. March 22, 2011). In later rulings on various Doe Defendants' motions, Judge Howell affirmed this position in these three cases and one additional case. See Call of the Wild Movie, LLC v. Smith, et al., Case No. 10-455, Doc. No. 56 (D.D.C. May 12, 2011) (also available at Call of the Wild Movie, LLC v. Smith, --- F.Supp.2d ----, 2011 WL 1807416 (D.D.C. May 12, 2011)); Maverick Entertainment Group, Inc. v. Does 1-2,115, Case No. 10-569, Doc. No. 133 (D.D.C. May 12, 2011) (also available at Maverick Entertainment Group, Inc. v. Doe, --- F.Supp.2d ----, 2011 WL 1807428 (D.D.C. May 12, 2011)); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 32 (D.D.C. May 12, 2011) (also available at Donkeyball Movie, LLC v. Does, --- F.Supp.2d ----, 2011 WL 1807452 (D.D.C. May 12, 2011)); see also Voltage Pictures, LLC v. Does 1-5,000, Case No. 10-873, Doc. No. 150 (D.D.C. May 12, 2011) (also available at Voltage Pictures, LLC v. Does, --- F.Supp.2d ----, 2011 WL 1807438 (D.D.C. May 12, 2011)).

[4] Judge Kollar-Kotelly's Memorandum Opinion can also be found at West Coast Productions, Inc. v. Does 1-5829, --- F.Supp.2d ----, 2011 WL 2292239 (D.D.C. June 10, 2011).

Case No. 10-453, Doc. No. 34 at p. 1 (D.D.C. July 2, 2010); <u>see also</u> <u>Arista Records LLC v.</u> <u>Does 1-19</u>, 551 F. Supp. 2d 1 (D.D.C. 2008) (Kollar-Kotelly, J.) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, … the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct."). The operative pleadings in the <u>Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG</u>, <u>West Bay One, Inc.</u>, <u>Call of the Wild Movie, LLC</u>, <u>Maverick Entertainment Group, Inc.</u>, <u>Voltage Pictures, LLC</u>, <u>Donkeyball Movie, LLC</u>, and <u>West Coast Productions, Inc.</u> cases contain nearly identical allegations, except for the named plaintiff and films, as every operative pleading was drafted by the same firm representing all of the plaintiffs.

Additionally, the District Court of Maine issued a well reasoned and analyzed opinion in <u>Arista Records, LLC v. Does 1-27</u>, 584 F. Supp. 2d 240 (D. Me. 2008), noting the legal requirements and the practical aspects of joinder in such cases. There, a group of copyright owners and licensees brought a copyright infringement action against 27 unidentified students of the University of Maine. <u>See id.</u> at 241. In relation to a number of motions to dismiss filed by various doe defendants, the magistrate judge suggested that the court enter an order to show cause that the plaintiffs demonstrate that they have adequate evidentiary support for their factual contentions regarding joinder. <u>Id.</u> at 250-251. The court did not act on the recommendation, and did not issue the show cause order, but did address the joinder issue in the context of the motions to dismiss. <u>See id.</u> at 251.

The court stated that it was not troubled with the joinder of the multiple doe defendants in one lawsuit. <u>Id.</u> The court also based its conclusion upon consideration of the plaintiffs' allegations regarding whether they had asserted that their right to relief related to or arose out of the same transaction or occurrence. The court noted that:

> the Complaint alleges the Doe Defendants (1) engaged in copyright infringement
> on the internet; (2) uploaded and downloaded copyrighted sound recordings using
> peer-to-peer networks; and (3) accessed the peer-to-peer network though a
> common ISP--the same University. The Plaintiffs further assert that twenty-five
> of the twenty-seven Doe Defendants used the same peer-to-peer network and
> many infringed the same copyrighted sound recording or different copyrighted
> sound recordings from the same artist. Finally, they allege that the Doe
> Defendants have been "active participants in what can only be described as an on-
> line music swap meet, unlawfully copying copyrighted works from other users
> and distributing such works to other users."

Id. (internal citations omitted).

The court then state that "[a]t the very least, it seems premature to make a final determination that joinder is not permissible under Rule 20." Id.[5] As a practical matter, the court noted that because the court cannot dismiss a case for misjoinder pursuant to Rule 21, the "remedy, then, would be to break up this one lawsuit into individual causes of action, an alternative that does not exactly resonate with practicality." Id. at 251. Further, the court went on to state:

> Regarding the magistrate judge's concern about the possibility of abuse of the
> litigation process by the Plaintiffs, the Court is again more sanguine. It is true, as
> the magistrate judge observes, that the Plaintiffs have not identified and served
> the Doe Defendants and that they seek their names through this lawsuit. It is also
> possible that once identified and served, the Doe Defendants will determine that it
> is in their best interests to resolve the case. But, the Court begins with the premise
> that the Plaintiffs have a statutorily protected interest in their copyrighted material
> and that the Doe Defendants, at least by allegation, have deliberately infringed
> that interest without consent or payment. Under the law, the Plaintiffs are entitled
> to protect their copyrighted material and it is difficult to discern how else in this
> unique circumstance the Plaintiffs could act. Not to act would be to allow those

---

[5] In Arista Records LLC v. Does 1-16, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), the district court echoed the timing considerations, though with decidedly fewer defendants (four). The court stated that "[t]o keep this finite community of defendants within this lawsuit will not, at this juncture of the litigation, generate any prejudice or harm to their respective defenses. Moreover, a joint defense may be more advantageous than previously considered. And should any prejudice or conflict arise, the Court can address the matter at that time. As the facts and circumstances become ripe and suggest or warrant severance, all can avail themselves of such a request then. Therefore, at this stage of the litigation, the Court finds that a request to sever the Doe Defendants as premature." Id. at *8.

who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests.

Id. at 252.

Overall, the District Court of Maine addressed not only Rule 20 but also the same practical concerns presented by the Court.  As with this case, where there is some relationship between unidentified defendants for infringing identical copyrights, it is too premature to definitively state that they have been improperly joined in one lawsuit.  To hold otherwise would, as a practical matter, prevent copyright holder plaintiffs from being able to protect their material or would unnecessarily burden the courts with additional cases, resulting in massive inefficiencies.

Additionally, numerous other courts in similar cases have declined to find misjoinder.  Such other cases include, without limitation, Arista Records LLC v. Does 1-16, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), and the DIRECTV, Inc. cases cited herein, all of which held that joinder was proper.  In fact, in many of the similar music download cases, the plaintiffs submitted a list of over three hundred court orders that have apparently approved joinder in similar cases.  See, e.g., Arista Records, LLC v. Does 1-27, 584 F. Supp. 2d at 251.[6] Overall, vast prior rulings comport with Plaintiff's position.

---

[6] Plaintiff acknowledges that the use of this list has been criticized by at least two courts.  See Arista Records, LLC v. Does 1-11, No. 1:07-CV-2828, 2008 WL 4823160, at *6 fn. 7 (N.D. Ohio Nov. 3, 2008); Fonovisa, Inc. v. Does 1-9, Civil Action No. 07-1515, 2008 WL 919701, at *5 fn. 10 (W.D. Pa. Apr. 3, 2008).

**5. Similar cases that have found misjoinder are significantly distinguishable and flawed.**

The distinction between the technology used by the Doe Defendants in this case and the technology used by defendants in the prior anonymous copyright infringement cases is significant. In the prior cases, the defendants utilized an online media distribution system that allowed them to share an entire file with one other user at a time. Accordingly, in those cases, the defendants had downloaded and/or distributed a number of different files on separate and distinct occasions. Here, as shown above, the torrent nature of the file sharing alleged in this case involves a number of people acting in concert to download and/or distribute one particular copyrighted work, Plaintiff's Movie. Therefore, prior court orders finding misjoinder in those cases are not persuasive, as the technology has significantly altered the way the Doe Defendants are infringing Plaintiff's Movie.

For example, <u>BMG Music v. Does 1-203</u>, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) is unpersuasive. First, the analysis in that case was quite sparse and unclear. The predominate reasoning for the court's conclusion of improper joinder seemed to be its finding that "[e]ach claim involves different property, facts, and defenses.…[g]iven this panoply of facts, law, and defenses…[j]oinder is improper." The court seemed to conclude that the allegations did not satisfy the second prong of Rule 20(a)(2) and lacked the requirement of "*any* question of law or fact common to all defendants will arise in the action." Rule 20(a)(2)(B) (emphasis added). However, the court never considered the initial common question of law of whether all defendants infringed the plaintiffs' copyrights or the initial common question of fact of whether all defendants used a file sharing service over the internet. Either of these questions was common to all defendants and would seem to satisfy the requirement of *any* common question of law or fact.

Further, part of that court's analysis provides a clear factual distinction to this case. There, the court found that each claim of copyright infringement involved separate and distinct copyrights held by multiple plaintiffs:

> John Doe 104, for example, is alleged to have infringed nine works held by five Plaintiffs. John Doe 113 is alleged to have infringed ten works owned by a different (sometimes overlapping) group of Plaintiffs, with only one copyright identical to John Doe 104 ("Guilty Conscience," by the popular rap lyricist Eminem). John Doe 199, meanwhile, is alleged to have infringed seven works, none of them the same as John Doe 58. Plaintiffs' Complaint, Exh. A. In other words, in addition to the individual acts of infringement encompassing separate transactions and occurrences, the actual property at issue is different for each Defendant.

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888 at *1.

Conversely, in the case at hand, the allegations relate to the infringement of only one copyright held by only one plaintiff.  Accordingly, a question of law and fact is common to all Doe Defendants – whether each Doe Defendant did unlawfully copy and/or distribute Plaintiff's Movie.

The fact that this case involves only one copyrighted work tends to show that the actions of all Doe Defendants arise from the same series of transactions or occurrences.  Further, the fact that this case involves only one copyrighted work, by definition, means that a question of fact or law will be common as to all Doe Defendants.  Again, to satisfy the requirement that a question of law or fact common to all defendants will arise in the action, Plaintiff need to only allege that *any* question of law or fact is common to all Doe Defendants.  Plaintiff has done that by alleging the same legal cause of action against each Doe Defendant and that each Doe Defendant has used an online media distribution system to infringe the exact same work – Plaintiff's copyrighted Movie.  [See Doc. No. 8 (First Amended Complaint) at ¶ 12]

Other opinions attempt to emphasize the language in BMG Music v. Does 1-203 that focused on the different defenses possible among the doe defendants in that case.  However, just

because certain Doe Defendants might present different defenses, and just because *some* facts related to the Doe Defendants might be different, that does not defeat Plaintiff's initial showing under this second prong of Rule 20(a)(2).  If a plaintiff had to show that every single fact and legal argument was the same for every defendant in a case, joinder of defendants could never exist.  There will always be some level of different facts or legal theories amongst co-defendants, even where their liabilities arise out of the same transaction or series of transactions.  That is precisely why the second prong of Rule 20(a)(2) only requires that *any* question of law or fact be common to all Doe Defendants.

Overall, these other opinions improperly combine the two distinct requirements under Rule 20(a)(2).  Because the court's basis for concluding that there was misjoinder in BMG Music v. Does 1-203 was the "panoply" of facts that significantly differ from this case, this Court should not be persuaded by the two paragraph analysis of that decision.  That and other rulings and orders do not address the specific requirements under Rule 20(a) and do not state the factual and procedural circumstances factoring into each court's decision.[7]

### 6.   Joinder will not prejudice the Doe Defendants or result in needless delay.

The final consideration for joinder is whether joinder would prejudice the parties or result in needless delay.  At this stage of the case, joinder will not prejudice the Doe Defendant and

---

[7]  Plaintiff notes that in one similar case, the Northern District Court of Ohio stated that "it appears that the majority of district courts who have addressed the issue of joinder and were faced with the same allegations to connect doe defendants in other music downloading lawsuits have concluded that those allegations were insufficient to satisfy the transactional requirement of Fed.R.Civ.P. 20(a)(2) and that joinder was therefore improper."  Arista Records LLC v. Does 1-11, No. 1:07-CV-2828, 2008 WL 4823160, *6 (N.D. Ohio Nov. 3, 2008).  However, it is interesting to note that the court then cites to the magistrate judge's recommendation in the Arista Records LLC v. Does 1-27 District Court of Maine case [No. 07-162-B-W, 2008 WL 222283, at *6 n.5 (D. Me. Jan. 25, 2008)], even though District Court Judge John A. Woodcock, Jr.'s opinion declining to adopt that recommendation was issued the week prior (October 29, 2008).  See generally Arista Records, LLC v. Does 1-27, 584 F. Supp. 2d 240 (D. Me. 2008).

24

will not result in needless delay.[8]  In fact, joinder in a single case of Doe Defendants who allegedly infringed the same copyrighted Movie promotes judicial efficiency and is beneficial to the Doe Defendants.  See London–Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 161 (D. Mass. 2008) (consolidating separate Doe lawsuits for copyright infringement where the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

Further, as stated in DIRECTV, Inc. v. Barrett, "[a]t this stage of the litigation, the court cannot conclude that any prejudice to the defendants will outweigh the judicial economy of joinder of claims. To the contrary, the defendants may ultimately benefit from leaving the claims joined; the fewer cases DIRECTV is managing, the better DIRECTV can control its costs--costs which potentially could be borne by the defendants."  220 F.R.D. at 632.

On the other hand, if the Court were to consider severance at this juncture, Plaintiff would face significant obstacles in its efforts to protect its copyrights from illegal file-sharers, which would needlessly delay its case.  Plaintiffs would be forced to file over 23,000 separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each Doe Defendant's identifying information. This would certainly not be in the "interests of convenience and judicial economy," or "secure a just, speedy, and inexpensive determination of the action." Lane, 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time

---

[8]  Because the Doe Defendants are currently identified only by their IP addresses and are not named parties, they are not required to respond to the First Amended Complaint or assert a defense and, consequently, can show no harm at this time.

being promotes more efficient case management and discovery" and no party prejudiced by joinder).[9]

    C.    <u>The Court should permit Plaintiff to conduct discovery to ascertain personal jurisdiction of the various Doe Defendants.</u>

**1. General standards regarding personal jurisdiction**

To establish personal jurisdiction, the Court must examine whether jurisdiction is applicable under the District of Columbia's long-arm statute, D.C. CODE § 13–423, and must also determine whether jurisdiction satisfies the requirements of due process. <u>See</u> <u>GTE New Media Services Inc. v. BellSouth Corp.</u>, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Due Process requires the plaintiff to show that the defendant has "minimum contacts" with the forum, thereby ensuring that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World–Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980); <u>see also</u> <u>GTE New Media Servs.</u>, 199 F.3d at 1347.

Further, in cases where a party's contacts with the jurisdiction are unclear and the record before the court is "plainly inadequate," courts have allowed for a discovery period within which to gather evidence to support jurisdiction. <u>See</u> <u>GTE New Media Servs.</u>, 199 F.3d at 1351–52 (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). "This Circuit's standard for

---

[9] Plaintiff cannot imagine that the Court truly wants Plaintiff to file over 23,000 separate cases related to Plaintiff's one work. As stated in <u>Arista Records, LLC v. Does 1-27</u>, that would result in an "alternative that does not exactly resonate with practicality." 584 F. Supp. 2d at 251.

permitting jurisdictional discovery is quite liberal," Diamond Chem. Co. v. Atofina Chems., Inc., 268 F.Supp.2d 1, 15 (D.D.C. 2003) (Kollar-Kotelly, J.), and jurisdictional discovery is available when a party has "at least a good faith belief" that it has personal jurisdiction.  Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

Courts have even permitted discovery even when a party has failed to establish a *prima facie* case of personal jurisdiction.  See GTE New Media Servs., 199 F.3d at 1351–52 ("... as the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these matters."); see also In re Vitamins Antitrust Litigation, 94 F.Supp.2d 26, 35 (D.D.C. 2000) (Hogan, J.) (discussing GTE New Media Servs. and stating that "the D.C. Circuit held that although plaintiffs had failed to establish a *prima facie* case of personal jurisdiction and the court was unable to tell whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to pursue [discovery]").  In such cases, a party is entitled to pursue "precisely focused discovery aimed at addressing matters relating to personal jurisdiction."  GTE New Media Services, Inc., 199 F.3d at 1351–52.

### 2. Plaintiff, and the Court, can only analyze personal jurisdiction after discovery.

Here, Plaintiff has only limited information about the Doe Defendants, namely their IP addresses and information about the methodology used to engage in allegedly infringing activity. See GTE New Media Services, Inc., 199 F.3d at 1352 (record before the court was "plainly inadequate" and "[j]urisdictional discovery will help to sort out these matters.").  Without additional information, Plaintiff and the Court have no way to evaluate the Doe Defendants' jurisdictional defenses.  See, e.g., London–Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 180–

181 (D. Mass. 2008) ("premature to adjudicate personal jurisdiction" and permitting plaintiff to engage in jurisdictional discovery); <u>Sony Music Entm't, Inc. v. Does 1–40</u>, 326 F.Supp.2d 556, 567 (S.D.N.Y. 2004) (evaluating personal jurisdiction premature without defendants' identifying information).

It has been argued in similar cases that a good faith basis for personal jurisdiction can be established by reliance upon geolocation information embedded in each IP address.  It has been suggested that IP addresses can be used to detect an individual's location and that Plaintiff should be forced to justify each Doe Defendant's personal jurisdiction by using tools available to the public that help reveal where a person using a particular IP address is likely to be physically located, such as reverse domain name service lookup ("reverse DNS") and the American Registry for Internet Numbers (the "ARIN database").

However, these publicly available IP lookups reveal only where a defendant is "likely" to be located.  In fact, one website often cited (http://whatismyipaddress.com/) provides the following disclaimer when a user clicks on "Additional IP Details": "This information should *not* be used for emergency purposes, trying to find someone's exact physical address, or other purposes that would require 100% accuracy."  (emphasis added).  Additionally, that very same website has a page dedicated "How accurate is GeoLocation?" which states: "Determining the physical location down to a city or ZIP code, however, is more difficult and less accurate because there is no official source for the information, users sometimes share IP addresses and Internet service providers often base IP addresses in a city where the company is basing operations. [¶] Accuracy rates on deriving a city from an IP address fluctuate between 50 and 80

percent, according to DNS Stuff, a Massachusetts-based DNS and networking tools firm." <u>See</u> http://whatismyipaddress.com/geolocation-accuracy.[10]

Given that these lookup tools are not completely accurate, this inquiry would not resolve the question of whether personal jurisdiction would be proper.  Ultimately, the Court would still be unable to properly evaluate jurisdictional arguments until the Doe Defendants are properly identified and named.  <u>See</u> <u>Sony</u>, 326 F.Supp.2d at 567–68 ("Assuming personal jurisdiction were proper to consider at this juncture, the [publicly available IP lookup] techniques suggested by amici, at best, suggest the mere 'likelihood' that a number of defendants are located [outside this jurisdiction].  This, however, does not resolve whether personal jurisdiction would be proper."); <u>see also Call of the Wild Movie, LLC v. Does 1-1,062</u>, Case No. 10-455, Doc. No. 40 at pp. 16-18 (D.D.C. March 22, 2011) (Howell, J.); <u>Maverick Entertainment Group, Inc. v. Does 1-4,350</u>, Case No. 10-569, Doc. No. 48 at pp. 16-18  (D.D.C. March 22, 2011) (Howell, J.); <u>Donkeyball Movie, LLC v. Does 1-171</u>, Case No. 10-1520, Doc. No. 26 at pp. 16-18  (D.D.C. March 22, 2011) (Howell, J.)  [collectively at <u>Call of the Wild Movie, LLC v. Does 1-1,062</u>, --- F.Supp.2d ----, 2011 WL 996786 at *9-10 (D.D.C. March 22, 2011)].

Further, the nature of the BitTorrent technology enables every user of the file-sharing protocol to access copyrighted material from other peers, who may be located in multiple jurisdictions "around the country," including this one.  [<u>See</u> Doc. No. 8 (First Amended Complaint), ¶ 4]  Here, the allegations state a specific use of a file-sharing protocol that may touch multiple jurisdictions to effectuate a download of a single copyrighted work, potentially subjecting all of the Doe Defendants to personal jurisdiction in this Court.

---

[10]  As just one example of the potential inaccuracy with these techniques, when Plaintiff's counsel went on to the website (http://whatismyipaddress.com) from their Leesburg, Virginia office, it showed up as Warrenton, Virginia.

Lastly, because no Doe Defendant has been named, no Doe Defendant has been "haled" before this Court.  Overall, at this stage of the case, Plaintiff and the Court have limited information to assess whether any Doe Defendant has a viable defense of lack of personal jurisdiction or to evaluate possible alternate bases to establish jurisdiction.  Therefore, the Court must allow Plaintiff to proceed with its requested discovery.  See, e.g., London–Sire Records, Inc., 542 F.Supp.2d at 181 ("Even taking all of the facts in [the putative defendant's] affidavit as true, it is possible that the Court properly has personal jurisdiction."); Humane Soc'y of the United States v. Amazon.com, Inc., No. 07–623, 2007 WL 1297170 at *3, 2007 U.S. Dist. LEXIS 31810 at *10 (D.D.C. May 1, 2007) (Kollar-Kotelly, J.) ("[A] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum," quoting Virgin Records Am., Inc. v. Does 1–35, No. 05–1918, 2006 WL 1028956 at *3 (D.D.C. Apr. 18, 2006) (Kollar-Kotelly, J.) (rejecting personal jurisdiction arguments where "Defendant's Motion to Quash is without merit [ ] because it is premature to consider the question of personal jurisdiction in the context of a subpoena directed at determining the identity of the Defendant," citing Elektra Entm't Grp., Inc. v. Does 1–9, No. 04–2289, 2004 WL 2095581, at *5 (S.D.N.Y. Sept. 8, 2004); Sony, 326 F.Supp.2d at 567–568; UMG Recordings v. Does 1–199, No. 04–0093 at *2 (D.D.C. Mar. 10, 2004) (Kollar-Kotelly, J.))).[11]

---

[11]  The Court states that "Plaintiff conceded at the status conference that the vast majority of the 23,322 putative defendants do not reside in the District of Columbia.  Furthermore, while counsel for Plaintiff has posited theories about how some of the putative defendants residing outside of this district may have committed copyright infringement inside of this district, no evidence has been presented in this regard."  [Doc. No. 9 (Order to Show Cause) at pp. 4-5]  First, this statement inaccurately portrays Plaintiff's counsel's arguments to the Court.  As Plaintiff's counsel has repeatedly argued, while it may be a logical assumption that a majority of the Doe Defendants reside outside of this district, such information cannot be conclusively

D.     Any action taken pursuant to Rules 20 or 21 or to dismiss any Doe Defendant on

venue or personal jurisdiction grounds would be premature.

In its Order to Show Cause, the Court states that it should consider whether Plaintiff's

pleadings will survive a motion to dismiss when ruling on a motion for expedited non-party

discovery, referring to Plaintiff's own motion.  [See Doc. No. 9 (Order to Show Cause) at p. 4]

However, the authority cited by Plaintiff for that proposition clearly shows that a plaintiff need

only show that its allegations amount to a legal cause of action, i.e. that a complaint can

withstand a motion to dismiss for failure to state a claim upon which relief can be granted (Fed.

R. Civ. P. Rule 12(b)(6)) and not necessarily that Plaintiff will eventually be able to overcome all

types of motions to dismiss.

In Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 579 (N.D. Cal. 1999) that court

stated:

> Third, plaintiff should establish to the Court's satisfaction that plaintiff's
> suit against defendant could withstand a motion to dismiss. See Gillespie, 629
> F.2d at 642. A conclusory pleading will never be sufficient to satisfy this element.
> Pre-service discovery is akin to the process used during criminal investigations to
> obtain warrants. The requirement that the government show probable cause is, in
> part, a protection against the misuse of ex parte procedures to invade the privacy
> of one who has done no wrong. A similar requirement is necessary here to prevent
> abuse of this extraordinary application of the discovery process and to ensure that
> plaintiff has standing to pursue an action against defendant. See e.g., Plant, 19
> F.Supp.2d at 1321 n. 2 (commenting that standing was likely absent because
> defendants were alleging only future acts of infringement, not past acts or patterns
> of infringement). Thus, plaintiff must make some showing that an act giving rise
> to civil liability actually occurred and that the discovery is aimed at revealing
> specific identifying features of the person or entity who committed that act.

---

established with the requested discovery.  Second, the Court's statement about Plaintiff
submitting evidence highlights Plaintiff's need to conduct discovery.  Only with the requested
discovery can Plaintiff submit evidence pertaining to its assertions of personal jurisdiction over
particular Doe Defendants.  The Court's analysis of seemingly requiring Plaintiff to submit
"evidence" to substantiate personal jurisdiction and venue over the Doe Defendants puts Plaintiff
in a perpetual Catch-22 – Plaintiff cannot conduct discovery because it has not provided any
evidence, but Plaintiff cannot obtain any evidence unless it is permitted to conduct discovery.

185 F.R.D. at 579-580.  In <u>Sony Music Entm't Inc. v. Does 1-40</u>, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), that court summarized this requirement as a plaintiff having to make "a concrete showing of a prima facie claim of actionable harm."  <u>Id.</u> at 564-565 (citing <u>Columbia Ins. Co. v. seescandy.com</u>, 185 F.R.D. at 579-581).  Further, in addressing <u>Columbia Ins. Co. v. seescandy.com</u>, this Court has stated that "[t]he court did not indicate that Plaintiff had to make an 'evidentiary showing' as Defendant represents in the present matter."  <u>Arista Records LLC v. Does 1–19</u>, 551 F.Supp.2d 1, 6 fn. 5 (D.D.C.) (Kollar-Kotelly, J.).

Here, Plaintiff has asserted a *prima facie* claim for direct copyright infringement in its First Amended Complaint that can withstand a motion to dismiss.  Specifically, Plaintiff has alleged that: (a) it owns the exclusive rights under the registered copyright for the Motion Picture, and (b) the Doe Defendants copied or distributed the copyrighted Motion Picture without Plaintiff's authorization.  [<u>See</u> Doc. No. 8 (First Amended Complaint), ¶¶ 9-15]  These allegations state a claim for copyright infringement.  <u>See</u> 17 U.S.C. §106(1)(3); <u>Feist Publ'ns, Inc. v. Rural Tel. Service Co., Inc.</u>, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L.Ed.2d 358 (1991); <u>In re Aimster Copyright Litig.</u>, 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music.  If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); <u>A & M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").

Additionally, as more fully set out in Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference [Doc. No. 5], Plaintiff identified the unique IP address for each Defendant, along with the date and time of alleged infringement and ISP that provided

Internet access to each Defendant and assigned the unique IP address to the Defendant, from information provided to it by Plaintiff's on-line piracy technology consultant, Guardaley, Limited ("Guardaley").  This information was obtained by Guardaley's proprietary tracing software program to trace the IP address for each Defendant, as detailed in the declarations of Benjamin Perino and Daniel Arheidt.  However, Plaintiff is unable to obtain the true identity of the Doe Defendants without issuing subpoenas to the non-party ISPs, and the Defendants must be identified before this suit can progress further.  Therefore, Plaintiff has already demonstrated good cause for the requested information.

Further, Plaintiff has made a prima facie evidentiary showing that the IP addresses it has identified did make an unlawful download or upload of Plaintiff's Movie on a specific date and time.  Again, Plaintiff utilized proprietary technology developed and instituted by Guardaley that detects the unauthorized distribution of movies and other audiovisual content and files over online media distribution systems.  See Daniel Arheidt Declaration (filed as Exhibit B to Plaintiff's Motion for Leave to Take Discovery [Doc. No. 5-2]) ¶ 4.  Accordingly, Defendants' IP addresses at the time of the alleged infringement were included in this case because they were copying and offering files containing Plaintiff's Movie for unlawful transfer or distribution.  See id. at ¶ 8.  In fact, Guardaley actually downloaded Plaintiff's Movie from the IP address assigned to these Defendants, just as it does with all Doe Defendants.  See id. at ¶ 9.  Lastly, Guardaley confirmed that the files that Defendants distributed were actually Plaintiff's Movie by watching both and comparing them.  Id. at ¶¶ 16-17.

Therefore, Plaintiff has already demonstrated good cause for the subpoenas and has established a *prima facie* case against each and every Doe Defendant.  Therein, the Court should

not have any reservations that Plaintiff's claims lack merit and should allow Plaintiff at least the opportunity to conduct discovery.[12]

Additionally, the Court has stated that it "finds it inappropriate and a waste of scarce judicial resources to allow and oversee discovery on claims or relating to defendants that cannot be prosecuted in this lawsuit.  If venue is improper in this district, the Court must either dismiss the case or transfer it to a court in which venue is proper."  [Doc. No. 9 (Order to Show Cause) at p. 4]  However, an analysis of venue and personal jurisdiction is premature at this stage of the proceedings, when no Defendant has been named or served and no Defendant has objected to venue or personal jurisdiction.[13]

---

[12]  This Court has repeatedly found that nearly identical allegations and evidentiary showings establish a *prima facie* case of copyright infringement against the Doe Defendants.  See Call of the Wild Movie, LLC v. Does 1-1,062, Case No. 10-455, Doc. No. 40 at pp. 23-24 (D.D.C. March 22, 2011) (Howell, J.); Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569, Doc. No. 48 at pp. 23-24 (D.D.C. March 22, 2011) (Howell, J.); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 26 at pp. 23-24 (D.D.C. March 22, 2011) (Howell, J.) [collectively at Call of the Wild Movie, LLC v. Does 1-1,062, --- F.Supp.2d ----, 2011 WL 996786 at *13 (D.D.C. March 22, 2011)]; see also West Coast Productions, Inc. v. John Does 1-5829, Case No. 11-57, Doc. No. 125 at p. 6 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.) [West Coast Productions, Inc. v. Does 1-5829, --- F.Supp.2d ----, 2011 WL 2292239 at *3 (D.D.C. June 10, 2011)]; Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577, Case No. 10-453, Doc. No. 44 at p. 6 fn. 2 (D.D.C. Sept. 10, 2010) (Collyer, J.)  [Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577, --- F.Supp.2d ----, 2010 WL 3522256 at *3 fn. 2 (D.D.C. Sept. 10, 2010)]; West Bay One, Inc. v. Does 1-1,653, Case No. 10-481, Doc. No. 36 at p. 6 fn. 4 (D.D.C. Sept. 10, 2010) (Collyer, J.) [West Bay One, Inc. v. Does, --- F.R.D. ----, 2010 WL 3522265 at *3 fn. 4 (D.D.C. Sept. 10, 2010)].

[13]  In analyzing the joinder issue in similar cases, Judge Howell stated that "[w]hile this Court is fully cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers pro se, severing the putative defendants is no solution to ease the administrative burden of the cases."  Call of the Wild Movie, LLC v. Does 1-1,062, Case No. 10-455, Doc. No. 40 at p. 13 (D.D.C. March 22, 2011) (Howell, J.); Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569, Doc. No. 48 at p. 13 (D.D.C. March 22, 2011) (Howell, J.); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 26 at p. 13 (D.D.C. March 22, 2011) (Howell, J.) [collectively at Call of the Wild Movie, LLC v. Does 1-1,062, --- F.Supp.2d ----, 2011 WL 996786 at *7 (D.D.C. March 22, 2011)]

In <u>Anger v. Revco</u>, 791 F.2d 956 (D.C. Cir. 1986) (per curiam), the court stated that a district court may not *sua sponte* dismiss a complaint for lack of venue or personal jurisdiction. <u>Id.</u> at 958, fn. 3.  Only a party may raise these claims as affirmative defenses in responsive pleadings.  <u>See</u> Fed. R. Civ. P. Rule 12(b).  Improper venue and lack of personal jurisdiction are "threshold defense[s]" which "absent timely objection" are deemed to be waived by a party. <u>Anger</u>, 791 F.2d at 958, fn. 3; <u>see also</u> 28 U.S.C. § 1406(b); Fed. R. Civ. P. Rule 12(h)(1).[14]

Additionally, as recognized by the Court, an analysis of venue under 28 U.S.C. §1400(a) is identical to an analysis of personal jurisdiction for a particular defendant – "[i]t is well established that § 1400(a)'s 'may be found' clause refers to a judicial district in which a defendant is subject to personal jurisdiction."  [Doc. No. 9 (Order to Show Cause) at p. 3 fn. 3 (citing <u>Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.</u>, 8 F.3d 441, 445-47 (7th Cir. 1993))]  As shown above, any determination of personal jurisdiction for any particular Doe Defendant is premature at this point, as the Court must allow Plaintiff an opportunity to conduct the requested discovery to identify each Doe Defendant.[15]

---

[14]  The Court's reference to 28 U.S.C. § 1406(a) is unavailing.  In <u>Stark Carpet Corp. v. M-Geough Robinson, Inc.</u>, 481 F.Supp. 499 (S.D.N.Y. 1980), that court held that under this section, which provides that the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district in which it could have been brought, a federal court can transfer case *sua sponte* only "once a proper objection to venue is made" by a party.  <u>Id.</u> at 509; <u>see also</u> <u>Sinwell v. Shapp</u>, 536 F.2d 15, 18 (3rd Cir. 1976) ("In the absence of any such statutory authority, it is inappropriate for the trial court to dispose of the case sua sponte on an objection to the complaint which would be waived if not raised by the defendant(s) in a timely manner." (citing 28 U.S.C. § 1406(b))).

[15]  The Court goes to great lengths to discredit Plaintiff's pleading of venue pursuant to 28 U.S.C. § 1391(b).  [<u>See</u> Doc. No. 9 (Order to Show Cause) at pp. 2-3]  However, the Court has not presented any authority that requires Plaintiff to plead its basis for venue over a particular defendant.  Notwithstanding, Plaintiff has alleged that "[v]enue in this District is proper under 28 US.C. § 1391(b) and/**or** 28 US.C. §1400(a).  [Doc. No. 8 (First Amended Complaint), ¶ 5 (emphasis added)]

Lastly, a plaintiff is not even required to plead the basis for personal jurisdiction over any defendant in the complaint, as again lack of personal jurisdiction is a threshold defense that is waived unless a defendant raises it in an answer or pre-answer motion.  Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del. 1995); Fed. R. Civ. P. Rule 12(b), (h)(1).  Once a defendant raises the defense of lack of personal jurisdiction, "the general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."  First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988).

To meet this burden, the plaintiff will normally be afforded the opportunity to engage in discovery relating to jurisdictional facts.  See GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified.").  "Therefore, before the complaint has been served and a response received, the court is not positioned to determine conclusively whether personal jurisdiction exists."  Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C. Cir. 1986) (per curiam).[16]

Overall, justice requires that Plaintiff be permitted to conduct the discovery requested.  Only with the requested discovery can Plaintiff properly identify the Doe Defendants.


V. CONCLUSION

As shown throughout this case, including Plaintiff's pleadings, motion for expedited discovery, and this statement, the nature of the "torrent" file sharing alleged by Plaintiff in this

---

[16]  Recently, Judge Kollar-Kotelly used the same analysis in denying multiple Doe Defendants' motions to quash subpoenas or dismiss them from a similar case.  See generally West Coast Productions, Inc. v. John Does 1-5829, Case No. 11-57, Doc. No. 125 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.) [West Coast Productions, Inc. v. Does 1-5829, --- F.Supp.2d ----, 2011 WL 2292239 (D.D.C. June 10, 2011)].

case permits Plaintiff to join all Doe Defendants in the case at this time.  As alleged, all Doe

Defendants have engaged in the same series of transactions to infringe on Plaintiff's copyright,

and common questions of law and fact will arise in this case.  Additionally, because Plaintiff has

not yet learned the identities of all Doe Defendants in this case, any severance under Rule 20 and

any analysis of venue or personal jurisdiction is premature at this time.

Overall, justice requires that Plaintiff be permitted to proceed with its case as pled and

styled.  Any other ruling would directly contradict the rulings in various federal district courts

throughout the country, including this Court, that have granted expedited discovery in Doe

Defendant lawsuits that are factually similar to the instant lawsuit and would be an anathema to

the stated legislative and Executive's public policy against online infringement of intellectual

property.[17]  Further, any other ruling would directly contradict recent rulings in this Court that

---

[17] Again, such cases include Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 7 (D.D.C. Apr. 28, 2008) (Kollar-Kotelly, J.); Metro-Goldwyn-Mayer Pictures Inc., et al. v. Does 1-10, Case No. 04-2005 (D.D.C.) (Robertson, J.); Twentieth Century Fox Film Corporation, et al. v. Does 1-9, Case No. 04-2006 (D.D.C.) (Sullivan, J.); Lions Gate Films, Inc., et al. v. Does 1-5, Case No. 05-386 (D.D.C.) (Sullivan, J.); UMG Recordings, et al. v. Does 1-199, Case No. 04-093 (D.D.C.) (Kollar-Kotelly, J.); Worldwide Film Entertainment LLC v. Does 1-749, Case No. 10-38, Doc. No. 5 (D.D.C. Jan. 26, 2010) (Kennedy, Jr., J.); G2 Productions LLC v. Does 1-83, Case No. 10-41, Doc. Nos. 5, 6 (D.D.C. Jan. 21, 2010) (Kollar-Kotelly, J.); Achte/Neunte Boll Kino Beteiligungs GMBH & CO KG v. Does 1- 2,094, Case No. 10-453, Doc. No. 6 (D.D.C. March 23, 2010) (Collyer, J.); West Bay One, Inc. v. Does 1- 2,000, Case No. 10-481, Doc. No. 4 (D.D.C. Apr. 13, 2010) (Bates, J.); Call of the Wild Movie, LLC v. Does 1-358, Case No. 10-455, Doc. No. 4 (D.D.C. Apr. 15, 2010) (Urbina, J.); Maverick Entertainment Group, Inc. v. Does 1-1,000, Case No. 10-569, Doc. No. 7 (D.D.C. May 24, 2010) (Leon, J.); Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569, Doc. No. 11 (D.D.C. Oct. 25, 2010) (Leon, J.); Voltage Pictures, LLC v. Does 1-5,000, Case No. 10-873, Minute Order (D.D.C. June 25, 2010) (Urbina, J.); Cornered, Inc. v. Does 1-2,177, Case No. 10-1476, Doc. Nos. 5, 6 (D.D.C. Oct. 22, 2010) (Kollar-Kotelly, J.); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 6 (D.D.C. Oct. 19, 2010) (Sullivan, J.).

specifically rejected various arguments posed by an ISP, amicus organizations, and numerous

Doe Defendants regarding personal jurisdiction and joinder.[18]

Respectfully submitted,
NU IMAGE, INC.

DATED:  June 21, 2011

By:     /s/ _____
        Thomas M. Dunlap (D.C. Bar # 471319)
        Nicholas A. Kurtz (D.C. Bar # 980091)
        DUNLAP, GRUBB & WEAVER, PLLC
        1200 G Street, NW Suite 800
        Washington, DC 20005
        Telephone: 202-316-8558
        Facsimile: 202-318-0242
        tdunlap@dglegal.com
        nkurtz@dglegal.com
        *Attorneys for the Plaintiff*

---

[18]  Again, those rulings are: Call of the Wild Movie, LLC v. Does 1-1,062, Case No. 10-455, Doc. No. 40 (D.D.C. March 22, 2011) (Howell, J.); Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569, Doc. No. 48 (D.D.C. March 22, 2011) (Howell, J.); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 26 (D.D.C. March 22, 2011) (Howell, J.) [collectively at Call of the Wild Movie, LLC v. Does 1-1,062, --- F.Supp.2d ----, 2011 WL 996786 (D.D.C. March 22, 2011)]; see also Call of the Wild Movie, LLC v. Smith, et al., Case No. 10-455, Doc. No. 56 (D.D.C. May 12, 2011) (also available at Call of the Wild Movie, LLC v. Smith, --- F.Supp.2d ----, 2011 WL 1807416 (D.D.C. May 12, 2011)); Maverick Entertainment Group, Inc. v. Does 1-2,115, Case No. 10-569, Doc. No. 133 (D.D.C. May 12, 2011) (also available at Maverick Entertainment Group, Inc. v. Doe, --- F.Supp.2d ----, 2011 WL 1807428 (D.D.C. May 12, 2011)); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520, Doc. No. 32 (D.D.C. May 12, 2011) (also available at Donkeyball Movie, LLC v. Does, --- F.Supp.2d ----, 2011 WL 1807452 (D.D.C. May 12, 2011)); Voltage Pictures, LLC v. Does 1-5,000, Case No. 10-873, Doc. No. 150 (D.D.C. May 12, 2011) (also available at Voltage Pictures, LLC v. Does, --- F.Supp.2d ----, 2011 WL 1807438 (D.D.C. May 12, 2011)); West Coast Productions, Inc. v. John Does 1-5829, Case No. 11-57, Doc. No. 125 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.) [West Coast Productions, Inc. v. Does 1-5829, --- F.Supp.2d ----, 2011 WL 2292239 (D.D.C. June 10, 2011)].